**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel to*
*the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(Tel) 212.216.8000
(Fax) 212.216.8001
Robert A. Wolf, Esq.
Christopher Tumulty, Esq.
rwolf@tarterkrinsky.com
ctumulty@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**GREGORY LANE MAIDMAN,**<br><br>          **Debtor.** | Case No. 11-12497 (MG) |
| **ROBERT L. GELTZER, as Chapter 7 Trustee of GREGORY LANE MAIDMAN,**<br><br>          **Plaintiff,**<br><br>    v<br><br>**WM MAIDMAN FAMILY LIMITED PARTNERSHIP, RICHARD MAIDMAN, MITCHEL MAIDMAN, FASHION WEAR REALTY CO., INC. d/b/a TOWNHOUSE MANAGEMENT, 22ND STREET SURPLUS HOLDING COMPANY, LP, 554-556 MANAGER, LLC, 556 CONDO HOLDING CORP., AMSTERDAM APARTMENTS MANAGER LLC, MAIDMAN COUSINS HOLDING LLC, MAIDMAN FAMILY PARKING LP, R&D MAIDMAN FAMILY LTD PARTNERSHIP, R&D 233/408 COMPANY, LP, and THE CHELSEA MANAGER LLC,**<br><br>          **Defendants.** | Case No.<br><br>**COMPLAINT** |

Robert L. Geltzer, Esq., as Chapter 7 trustee (the "Trustee" or "Plaintiff") of Gregory

Lane Maidman (the "Debtor"), and as Trustee, the Plaintiff in this adversary proceeding, by and

through his attorneys, Tarter Krinsky & Drogin LLP, as and for his Complaint against defendants

WM Maidman Family Limited Partnership ("WM Maidman"), Richard Maidman, Mitchel

Maidman, Fashion Wear Realty Co., Inc. d/b/a/ Townhouse Management ("Townhouse"), 22nd

Street Surplus Holding Company, LP ("22nd Street Surplus"), 554-556 Manager, LLC ("554-

556 Manager"), 556 Condo Holding Corp. ("556 Condo Holding"), Amsterdam Apartments

Manager LLC ("Amsterdam Manager"), Maidman Cousins Holding LLC ("Maidman Cousins"),

Maidman Family Parking LP ("Maidman Family Parking"), R&D Maidman Family Ltd

Partnership ("R&D Maidman"), R&D 233/408 Company, LP ("R&D 233/408") and The

Chelsea Manager LLC ("Chelsea Manager") (collectively the "Defendants"), alleges as follows

based upon information and belief acquired from, among other things: (i) available documents

and records of the Debtor; (ii) publicly available documents and; (iii) testimony given and

documents produced in a prior adversary proceeding, *Geltzer v. Maidman, et al.*, Adv. Proc.

Case No. 13-01349 ("Prior Adversary Proceeding").

## PROCEDURAL BACKGROUND

1.      On May 24, 2011 (the "Petition Date"), the Debtor filed a voluntary Chapter 7

petition for relief under Title 11 of the United States Bankruptcy Court for the Southern District

of New York.

2.      On or about May 25, 2011, the Trustee was appointed interim Trustee of the

Debtor.  He subsequently became permanent Trustee pursuant to Section 702(d) and by

operation of law, and has been acting and continues to act as such Trustee.

## PARTIES

3.      Plaintiff is the duly appointed Chapter 7 Trustee for the Debtors. The Trustee is a resident of the State of New York and is a licensed New York attorney maintaining an office at 1556 Third Avenue, Suite 505, New York, New York 10128.

4.      The Debtor is an individual whose last known address is 435 East 86th Street, New York, New York 10028.

5.      At all times relevant hereto, Defendant WM Maidman was and is a limited partnership organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

6.      At all times relevant hereto, Defendant Richard Maidman was and is the Debtor's uncle, having a last known address of 70 East 55th Street, New York, New York 10022.

7.      At all times relevant hereto, Defendant Mitchel Maidman was and is the Debtor's first cousin and the son of Richard Maidman, having a last known address of Steamboat Landing, Sands Point, New York 11050.

8.      At all times relevant hereto, Defendant Townhouse was and is a corporation organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

9.      At all times relevant hereto, Defendant 22nd Street Surplus was and is a limited partnership organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

10.      At all times relevant hereto, Defendant 554-556 Manager was and is a limited liability company organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

11.     At all times relevant hereto, Defendant 556 Condo Holding was and is a corporation organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

12.     At all times relevant hereto, Amsterdam Manager was and is a limited liability company organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

13.     At all times relevant hereto, Maidman Cousins was and is a limited liability company organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

14.     At all times relevant hereto, Maidman Family Parking was and is a limited partnership organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

15.     At all times relevant hereto, R&D Maidman was and is a limited partnership organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

16.     At all times relevant hereto, R&D 233/408 was a limited partnership organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

17.     At all times relevant hereto, Chelsea Manager was a limited liability company organized and existing under the laws of the State of New York, with a principal office address at 70 East 55th Street, New York, New York 10022.

## JURISDICTION AND VENUE

18.     The United States District Court for the Southern District of New York (the "District Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  By virtue of 28 U.S.C. § 157(a), and the Amended Standing Order of Reference, dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

19.     This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A) and (O).  Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding. To the extent any of the Counts asserted by Plaintiff against the Defendants in this adversary proceeding are not deemed core proceedings and/or are deemed to be related to a case under Title 11 of the United States Code, Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

20.     This adversary proceeding is commenced pursuant to the United States Bankruptcy Code (the "Bankruptcy Code") §§ 101, 105(a), 362, 541 and 542; the general equity powers of the Bankruptcy Court; and the general common law of the State of New York; and it is also commenced pursuant to Federal Rules of Bankruptcy Procedure 6009, 7001, and 7008 to recover money or property belonging to the Debtors' estate.

21.     Venue of the subject Chapter 7 case and of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

22.    At all times relevant hereto, and as of the Petition Date, the Debtor (and since the

Petition Date, the Trustee on behalf of the Debtor's bankruptcy estate), Richard Maidman,

Mitchel Maidman, and others, including members of the Maidman family, had and/or continue to

have partnership, membership, and/or other interests in various business entities operated by

and/or on behalf of the Maidman family, which entities include, but are not limited to: WM

Maidman, R&D Maidman, Townhouse, 22nd Street Surplus, 554-556 Manager, 556 Condo

Holding, Amsterdam Manager, Maidman Cousins Holding, Maidman Family Parking, R&D

233/408, and Chelsea Manager (the "Maidman Real Estate Entities").  The Maidman Real Estate

Entities owned and/or managed, and continue to own and/or manage (a) various real estate

assets, including but not limited to, residential and/or mixed use buildings, condominium and

cooperative apartment units, and parking garages, primarily located in New York City, and (b)

direct and/or indirect interests in entities owning such real estate assets, with aggregate values in

the millions of dollars.

23.    At all times relevant hereto, Mitchel Maidman was and is a managing partner

managing member and/or controlling person of the Maidman Real Estate Entities, and in such

capacities, owed and continues to owe fiduciary duties to each of the other partners, members,

and interest holders of those entities including the Debtor, the Trustee and the Debtor's estate.

24.    At all times relevant hereto, Richard Maidman was and is a managing partner

managing member and/or controlling person of the Maidman Real Estate Entities, and in such

capacities, owed and continues to owe fiduciary duties to each of the other partners, members,

and interest holders of those entities including the Debtor, the Trustee and the Debtor's estate.

A. **The WM Maidman Distributions**

25.     At all times relevant hereto until the Petition Date, the Debtor owned a seven

percent (7%) interest in Defendant WM Maidman, a Maidman Real Estate Entity.  Commencing

as of the Petition Date, and continuing through and including the present, the Trustee, on behalf

of the Debtor's estate, has owned and still owns said seven percent (7%) interest in Defendant

WM Maidman.

26.     At all times relevant hereto, Richard Maidman owned and continues to own an

eighteen percent (18%) interest in WM Maidman (1% as general partner and 17% as limited

partner).

27.     At all times relevant hereto, Mitchel Maidman owned and continues to own a

seven percent (7%) interest in WM Maidman.

28.     At all times relevant hereto, through and including the present, the following

Maidman family members have owned and continue to own the following respective percentage

interests in WM Maidman: David Maidman (18%), Patrick Maidman (7%), Dagny Maidman

(7%), Randi Maidman (7%), and Wendy Maidman (7%).  The remainder of the company is

owned by: Townhouse (1%), Maidman Ventures I, LLC (1%), and Bonnie Maidman Trust

(20%).

29.     At all times relevant hereto, it was and continues to be the regular course of

business and practice of WM Maidman to provide monthly distributions to the children of David

Maidman and Richard Maidman who were not and/or are not at the time of such distributions

working for the Maidman Real Estate Entities (the "Maidman Cousins Distributees").  These

distributions generally were in the amount of $3,000.00 per month to each person (the "WM

Distributions").   Richard Maidman and David Maidman also received regular monthly

distributions from WM Maidman in the amount of $2,000.00 per month each.  Richard Maidman

and Mitchel Maidman had and continue to have responsibility for, and/or oversaw and continue

to oversee, the disbursement of the WM Distributions.

30.     At all relevant times up to and including April 2011, WM Maidman made regular

monthly WM Distributions to each of the Maidman Cousins Distributees, including the Debtor,

in the amount of $3,000.00 per month.  Each of those monthly WM Distributions to the

Maidman Cousins Distributees, including the Debtor, was debited against his or her capital

account in WM Maidman.

31.     Commencing with the month of July, 2011 (subsequent to the Petition Date), and

continuing through and including December 2012, WM Maidman made monthly WM

Distributions (the "Post-Petition WM Distributions") to the Debtor and to the Debtor's wife,

Elizabeth Maidman (rather than to the Trustee), in the aggregate amount of $3,000.00 per

month,[1] but debited those Post-Petition WM Distributions against the WM Maidman capital

account of the Debtor's bankruptcy estate.

32.     Notwithstanding that they knew, or at the very least had reason to know, that as of

the Petition Date, the Trustee, on behalf of the Debtor's bankruptcy estate, had become the

owner of what had been the Debtor's aforesaid 7% interest in WM  Maidman, Richard Maidman

and Mitchel Maidman (a) caused the Post-Petition WM Distributions to be made by WM

Maidman to the Debtor and Elizabeth Maidman, rather than to the Trustee, who was the only

party then entitled to same, and (b) nevertheless, caused the Post-Petition WM Distributions to

be debited against the estate's capital account in WM Maidman.  Despite the Trustee's demands

of WM Maidman, Richard Maidman and Mitchel Maidman for payment to the Trustee of the

---

[1] The monthly distributions totaled $3,000.00 per month, except for the month of December 2011, in which an additional $1,000.00 was distributed to Elizabeth Maidman.

aggregate amount of $55,000 for the Post-Petition WM Distributions, no such payments have been made to the Trustee by or on behalf of said Defendants.

33.   Moreover, commencing in January 2013 and continuing through and including the present, no monthly WM Distributions at all have been made to the Trustee (nor to the Debtor or the Debtor's wife), notwithstanding the fact that during the same period, monthly WM Distributions in the amount of $3,000.00 each have been made, and continue to be made, to each of the Maidman Cousins Distributees other than the Debtor, namely, Patrick Maidman, Dagny Maidman, Randi Maidman, and Wendi Maidman. Despite the Trustee's demands of WM Maidman, Richard Maidman and Mitchel Maidman for payments to the Trustee of monthly WM Distributions for the period commencing January, 2013 through and including the present, no such payments have been made to the Trustee by or on behalf of said Defendants.  At the rate of $3,000.00 per month, the aggregate amount of such unpaid WM Distributions (the "Unpaid Post-2012 WM Distributions") is $81,000.00 through and including March, 2015.

### B.  Diverted Amsterdam Apartments Sale Profits

34.   At all times relevant hereto, Defendant Amsterdam Manager was and is a Maidman Real Estate Entity controlled and managed by Richard Maidman and Mitchel Maidman.

35.   At all times relevant hereto until the Petition Date, the Debtor had a 25.5% interest in the ownership, profits and losses of Amsterdam Manager.  Since the Petition Date, through and including the present, the Trustee on behalf of the Debtor's estate has owned and still owns said 25.5% interest in Amsterdam Manager.

36.   In or about 2013, Amsterdam Manager received profits from the sale of a real estate portfolio of at least 39 properties in New York City, in which Amsterdam Manager

maintained an interest though a real estate investment trust (the "Amsterdam REIT") (the "Transferred Properties").

37.    By reason of the 25.5% interest of the Debtor's estate in Amsterdam Manager, the Trustee was entitled to a share of the profits from the sale of the Transferred Properties in the amount of $1,231,093.00.  After adjusting for the estate's beginning negative capital account in Amsterdam Manager of $458,329.00 at the time, a distribution of $772,764.00 was due to the Trustee as a result of the profits from the sale of the Transferred Properties (the "Amsterdam Profit").

38.    The Trustee has never received the Amsterdam Profit distribution which was due and owing.

39.    The above calculation of the Amsterdam Profit distribution owed to the Trustee on behalf of the Debtor's estate was based on a 2013 IRS Schedule K-1 form prepared by the Maidman Real Estate Entities' accountants and provided as a draft to the Trustee.  Shortly thereafter, Defendants Richard Maidman and Mitchel Maidman caused the Amsterdam Profit to be diverted and allocated to other interests in the Maidman Real Estate Entities from which the Debtor's estate might not be entitled to a distribution.

40.    Richard Maidman and Mitchel Maidman directed, caused and enabled the Amsterdam Profit to be diverted away from the bankruptcy estate intentionally and for the sole purposes of retaining the funds for the Maidman Real Estate Entities and depriving the Trustee of the Amsterdam Profit.

41.    The aforesaid interest in the Amsterdam Profit is and was property of the Debtor's estate that was improperly diverted by Richard Maidman and Mitchel Maidman in violation of

the Trustee's and the estate's rights thereto and in violation of Richard Maidman's and Mitchel

Maidman's fiduciary duties owed to the Trustee.

### C. Other Improper Diversions of the Estate's Entitlement to Distributions and the Necessity for an Accounting by Each of the Maidman Real Estate Entities

42.    At all times relevant hereto, the Maidman Real Estate Entities included, among

other entities, as set forth above, 556 Condo Holding, 554-556 Manager and R&D 233/408.

Prior to the Petition Date, the Debtor had ownership interests of 3.688963%, 8.0%, and 0.75%,

respectively, in 556 Condo Holding, 554-556 Manager and R&D 233/408. The Trustee, on

behalf of the Debtor's estate, succeeded to those respective interests upon the filing of the

Petition.

43.    At all times relevant hereto, Richard Maidman and Mitchel Maidman controlled

and/or managed and continue to control and/or manage 556 Condo Holding, 554-556 Manager

and R&D 233/408, Townhouse, Maidman Ventures LLC, Maidman Ventures I LLC, and the

other Maidman Real Estate Entities.

#### 1. *The Aurora Condominium*

44.    At all times relevant hereto, 556 Condo Holding and 554-556 Manager owned

interests in, controlled and/or managed a condominium property located at 554-556 3rd Avenue,

New York, New York 10016 and known as The Aurora ("The Aurora"). As of 2013, The

Aurora had an appraised value of approximately $80 million.

45.    From in or about 2006 through and including 2011, no fewer than seven

condominium units in The Aurora were sold by 556 Condo Holding. Those sales generated

profits of not less than approximately $5 million, of which the Debtor was entitled to receive not

less than approximately $184,000.00 based on his percentage interest in 556 Condo Holding (the "Aurora Profit").

46.     Neither the Debtor nor the Trustee has ever received the Aurora Profit or any portion thereof.

47.     The above calculation of the Aurora Profit distribution is based upon the pertinent 556 Condo Holding tax returns prepared by the Maidman Real Estate Entities' accountants, including but not limited to a 2013 IRS Schedule K-1 form prepared by the Maidman Real Estate Entities' accountants and provided as a draft to the Trustee. Defendants Richard Maidman and Mitchel Maidman caused the Aurora Profit to be diverted and allocated to other interests in the Maidman Real Estate Entities from which the Debtor's estate might not be entitled to a net positive distribution in the Debtor's Bankruptcy estate.

48.     Richard Maidman and Mitchel Maidman caused all or part of the Aurora Profit to be diverted as a portion of a $816,000.00 payment toward a life insurance policy for Richard Maidman which was fraudulently booked as a 2010 investment in Maidman Ventures I LLC.

### 2. *R&D 233/408*

49.     At all relevant times up to and including March 2012, R&D 233/408 owned certain properties located at 233 East 80th Street and 408 East 88th Street in New York, New York (the "233/408 Properties").

50.     In March 2012, R&D 233/408 sold the 233/408 Properties to a third-party purchaser. The profits from the sale of the 233/408 Properties were diverted through intercompany loans and transfers among the Maidman Real Estate Entities in order to benefit Richard Maidman and Mitchel Maidman to the detriment of the Trustee who, on behalf of the

Debtor's estate, was entitled to the estate's respective interests in those profits, which is believed to aggregate in excess of $50,000.00 (the "233/408 Profits").

### 3. *Other Diverted Profits*

51.    In further breach of their fiduciary duties, Richard Maidman and Mitchel Maidman also utilized their control and management of the Maidman Real Estate Entities to divert other profits realized by various Maidman Real Estate Entities and thereby deprive the Debtor and the Debtor's estate of other distributions from the Maidman Real Estate Entities to which, respectively, the Debtor and the Debtor's estate were and are entitled.

52.    Despite prior proper discovery demands and follow-up requests made by the Trustee and his professionals in the Debtor's bankruptcy case, the Defendants have failed to provide the Trustee with a full and proper accounting of all transactions in which the Maidman Entities have engaged for the period commencing six (6) years prior to the Petition Date and continuing through the present (the "Relevant Time Period").    Accordingly, the Trustee is entitled to an accounting from each of the Defendant Maidman Real Estate Entities with respect to, among other things, all transactions (including, without limitation, sales transactions, lease transactions, loan transactions, intercompany loans, intercompany transfers and investments), all assets and liabilities, all distributions and disbursements, all mortgages and sources of funds used to pay such mortgages, all major renovations and capital improvements, the current market values of each real property asset, all federal and state tax filings, and other investments with non-Maidman-affiliated entities during the Relevant Time Period by each of the Maidman Real Estate Entities, including, without limitation, the entities in which the Trustee has a direct interest: 22nd Street Surplus, 554-556 Manager, 556 Condo Holding, Amsterdam Manager,

Maidman Cousins Holding, Maidman Family Parking, R&D Maidman, WM Maidman, R&D

233/408, and Chelsea Manager (collectively the "Debtor's Entities").[2]

53.    As set forth below, the Trustee is entitled to judgment on the following causes of

action and reserves the right to amend this Complaint, add additional defendants, and/or

commence additional proceedings based on the information garnered from the discovery in this

adversary proceeding and from the full and complete accounting demanded herein.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violations of the Automatic Stay Under Section 362(a) Against WM Maidman, Richard Maidman and Mitchel Maidman)

54.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing

allegations with the same force and effect as if fully set forth herein.

55.    Pursuant to section 541 of the Bankruptcy Code, the Post-Petition WM

Distributions constituted property of the Debtor's bankruptcy estate.

56.    The actions of WM Maidman, Richard Maidman and Mitchel Maidman in

causing the Post-Petition WM Distributions to be made to the Debtor and to the Debtor's wife

Elizabeth Maidman, rather than to the Trustee on behalf of the Debtor's estate, but nevertheless

debiting the estate's capital account in WM Maidman therefor, were undertaken willfully and

---

[2] The Trustee's interests in each of the Debtor's Entities is as follows:
   a.   22nd Street Surplus: 0.75%.
   b.   554-556 Manager: 8%.
   c.   556 Condo Holding: 3.688963%.
   d.   Amsterdam Manager: 25.5%.
   e.   Maidman Cousins Holding: 16.6666667%.
   f.   Maidman Family Parking: 11.95%.
   g.   R&D Maidman: 0.75%.
   h.   WM Maidman: 7%.
   i.   R&D 233/408: 0.75%.
   j.   Chelsea Manager: 10%.

with knowledge of the Debtor's bankruptcy filing, the existence of the automatic stay, and the Trustee's entitlement to the  Pot-Petition WM Distributions on behalf of the Debtor's estate.

57.    By reason of the foregoing, the Trustee, on behalf of the Debtor's estate, has been damaged and is entitled to: (i) a declaration that WM Maidman, Richard Maidman and Mitchel Maidman have violated the automatic stay; (ii) an order enforcing the automatic stay and enjoining WM Maidman, Richard Maidman and  Mitchel Maidman from making any further distributions with respect to the estate's interest in WM Maidman to any person or entity other than the Trustee; and (iii) damages under Section 362(k) of the Bankruptcy Code in the amount of at least $55,000.00, together with punitive damages in the amount of $110,000.00, plus interest upon all of the foregoing and reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Conversion Against WM Maidman, Richard Maidman and Mitchel Maidman)

58.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

59.    With knowledge of the Debtor's bankruptcy filing and the existence of the automatic stay, WM Maidman, Richard Maidman and Mitchel Maidman have wrongfully and willfully converted property belonging to the Debtor's estate, specifically, the Post-Petition WM Distributions, by causing same to be distributed to the Debtor and to Elizabeth Maidman, rather than to the Trustee, the only party, on behalf of the Debtor's bankruptcy estate, entitled to same post-Petition Date.

60.    As a result of the aforesaid wrongful conversion of the Post-Petition WM Distributions by WM Maidman, Richard Maidman and Mitchel Maidman, the Trustee is entitled

to damages in the amount of at least $55,000.00, together with punitive damages in the amount

of $110,000.00, plus interest upon all of the foregoing and reasonable attorneys' fees.


### AS AND FOR A THIRD CAUSE OF ACTION
**(Turnover Against WM Maidman, Richard Maidman and Mitchel Maidman)**

61.     Plaintiff repeats, reiterates and re-alleges each and every of the foregoing

allegations with the same force and effect as if fully set forth herein.

62.     As set forth above, since January 2013, Richard Maidman, Mitchel Maidman, and

WM Maidman have willfully and intentionally withheld monthly distributions from WM

Maidman to the Trustee, on behalf of the Debtor's estate, while making such monthly

distributions to each of the Maidman Cousin Distributees, which distributions were owed to the

Trustee based on the Debtor's seven per cent (7%) partnership interest in WM Maidman.

63.     Said withheld distributions amount to $81,000.00 through March 2015, and

constitute property of the estate as provided for in Section 541 of the Bankruptcy Code.

64.     No part of said amount of $81,000.00 has been paid by WM Maidman, Richard

Maidman or Mitchel Maidman, although duly demanded by the Trustee.

65.     The Defendant has failed to turn over any of said amount of $81,000.00 to the

Trustee.

66.     Based upon the foregoing, and pursuant to Section 542 of the Bankruptcy Code,

the WM Maidman, Richard Maidman and Mitchel Maidman are liable to Plaintiff to turn over

said $81,000.00 to the Trustee, together with any additional amounts withheld subsequent to the

date of the filing this adversary proceeding.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Richard Maidman and Mitchel Maidman)

67.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

68.    Richard Maidman and Mitchel Maidman, in their capacities as managing partners managing members and/or controlling persons of WM Maidman, owed and continue to owe fiduciary duties to the Trustee, on behalf of the Debtor's estate, as the holder of a seven per cent (7%) partnership interest in WM Maidman.

69.    In breach of said fiduciary duties, since January 2013, Richard Maidman and Mitchel Maidman, willfully and intentionally have withheld monthly distributions from WM Maidman to the Trustee, on behalf of the Debtor's estate, while making such monthly distributions to each of the Maidman Cousin Distributees, thereby unjustifiably treating the Trustee differently than each other similarly situated holder of a seven per cent (7%) partnership interest in WM Maidman.

70.    Through their aforesaid actions in withholding such distributions from the Trustee, Richard Maidman and Mitchel Maidman have benefited themselves to the detriment of the Debtor's bankruptcy estate.

71.    By virtue of the foregoing, the Trustee, on behalf of the Debtor's bankruptcy estate, has been damaged and is entitled to a judgment against Richard Maidman and Mitchel Maidman, jointly and severally, for their breaches of fiduciary duty, in an amount to be determined at trial but not less than $81,000.00 through March 2015, together with any additional amounts withheld subsequent to the date of filing this adversary proceeding.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Turnover against Amsterdam Manager, Richard Maidman and Mitchel Maidman)**

72.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

73.    As set forth above, Richard Maidman, Mitchel Maidman, and Amsterdam Manager have willfully and intentionally withheld the Amsterdam Profit, which was and is owed to the Trustee based on the Debtor's interest in Amsterdam Manager.

74.    Said withheld Amsterdam Profit amounts to $772,764.00, and constitutes property of the estate as provided for in Section 541 of the Bankruptcy Code.

75.    No part of said amount of $772,764.00 has been paid by Amsterdam Manager, Richard Maidman or Mitchel Maidman, although duly demanded by the Trustee.

76.    Those Defendants have failed to turn over any of said amount of $772,764.00 to the Trustee.

77.    Based upon the foregoing, and pursuant to Section 542 of the Bankruptcy Code, the Amsterdam Manager, Richard Maidman and Mitchel Maidman are liable to Plaintiff to turn over said $772,764.00 to the Trustee.

## AS AND FOR A SIXTH CAUSE OF ACTION
**(Turnover against 556 Condo, 554-556 Manager, Richard
Maidman and Mitchel Maidman)**

78.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

79.    As set forth above, Richard Maidman, Mitchel Maidman, 556 Condo and 554-556 Manager have willfully and intentionally withheld the Aurora Profit, which was and is owed to the Trustee based on the Debtor's interest in 556 Condo and 554-556 Manager.

80.    Said withheld Aurora Profit amounts to $184,000.00, and constitutes property of the estate as provided for in Section 541 of the Bankruptcy Code.

81.    No part of said amount of $184,000.00 has been paid by Amsterdam Manager, Richard Maidman or Mitchel Maidman, although duly demanded by the Trustee.

82.    Those Defendants have failed to turn over any of said amount of $184,000.00 to the Trustee.

83.    Based upon the foregoing, and pursuant to Section 542 of the Bankruptcy Code, the Amsterdam Manager, Richard Maidman and Mitchel Maidman are liable to Plaintiff to turn over said $184,000.00 to the Trustee.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Turnover against R&D 233/408, Richard Maidman and Mitchel Maidman)

84.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

85.    As set forth above, Richard Maidman, Mitchel Maidman, and R&D 233/408 have willfully and intentionally withheld the 233/408 Profits, which were and are owed to the Trustee based on the Debtor's interest in R&D 233/408.

86.    Said withheld 233/408 Profits constitute property of the estate as provided for in Section 541 of the Bankruptcy Code.

87.    No part of the 233/408 Profits have been paid by R&D 233/408, Richard Maidman or Mitchel Maidman, although duly demanded by the Trustee.

88.    Those Defendants have failed to turn over any of the 233/408 Profits to the Trustee.

89.    Based upon the foregoing, and pursuant to Section 542 of the Bankruptcy Code,
R&D 233/408, Richard Maidman and Mitchel Maidman are liable to Plaintiff to turn over said
the 233/408 Profits to the Trustee in an amount to be determined at trial, but not less than
$50,000.00.


## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Richard Maidman and Mitchel Maidman)

90.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing
allegations with the same force and effect as if fully set forth herein.

91.    Richard Maidman and Mitchel Maidman, in their capacities as managing partners
managing members and/or controlling persons of the Maidman Real Estate Entities, owed
fiduciary duties to the Debtor and to the Trustee, succeeding to the Debtor's interests in the
Maidman Real Estate Entities subsequent to the Petition Date, on behalf of the Debtor's estate.

92.    Richard Maidman and Mitchel Maidman failed to discharge their fiduciary duties
by improperly diverting and dispersing of, among others, the Amsterdam Profit, the Aurora
Profit, and the 233/408 Profits, in such a manner as to deprive the Debtor and the Trustee,
succeeding to the Debtor's interests, of the proceeds and distributions due and owing therefrom.

93.    Through their actions and inactions regarding such proceeds, Richard Maidman
and Mitchel Maidman have wasted estate assets and benefited themselves to the detriment of the
Debtor's bankruptcy estate.

94.    The actions and inactions of Richard Maidman and Mitchel Maidman were
undertaken willfully, with full knowledge of the Debtor's, and the Trustee's, right to receive the
benefits of such proceeds, and with the intent to deprive the Debtor and the Trustee thereof.

95.     By virtue of the foregoing, the Trustee, on behalf of the Debtor's bankruptcy estate, has been damaged and is entitled to a judgment against Richard Maidman and Mitchel Maidman, jointly and severally, for their breaches of fiduciary duty, in an amount to be determined at trial but not less than $1,006,764.00, together with interest thereon and reasonable attorneys' fees.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Conversion Against Richard Maidman and Mitchel Maidman)

96.     Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

97.     By reason of Richard Maidman's and Mitchel Maidman's actions in improperly diverting and dispersing of, among others, the Amsterdam Profit, the Aurora Profit and the 233/408 Profits, in such a manner as to deprive the Debtor and the Trustee, succeeding to the Debtor's interests, of the proceeds and distributions due and owing therefrom, Richard Maidman and Mitchel Maidman have wrongfully and willfully converted property belonging to the Trustee, to the exclusion and detriment of the Trustee, and have therefore improperly exercised dominion and control over such property.

98.     The Trustee has a superior and immediate right to possession of the Amsterdam Profit, the Aurora Profit and the 233/408 Profits which were wrongfully held and maintained by Richard Maidman and Mitchel Maidman and withheld from the Trustee.

99.     The actions and inactions of Richard Maidman and Mitchel Maidman were taken willfully and with knowledge of the Debtor's bankruptcy filing and the Trustee's entitlement to the Debtor's interest in the Amsterdam Profit, the Aurora Profit and the 233/408 Profits.

100.    As a result of the wrongful conversion by Richard Maidman and Mitchel Maidman, the Trustee has suffered and will continue to suffer damages in an amount to be determined at trial, but not less than $1,006,764.00 together with punitive damages in an amount of $2,013,528.00, together with interest thereon and reasonable attorneys' fees

## AS AND FOR A TENTH CAUSE OF ACTION
### (Accounting Against All Defendants)

101.    Plaintiff repeats, reiterates and re-alleges each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

102.    As of the Petition Date, the Debtor held, and since the Petition Date the Trustee, on behalf of the Debtor's estate has held, and continues to hold, partnership, membership and/or other ownership interests directly and/or indirectly in each of the Maidman Real Estate Entities. Throughout said time period, through and including the present, Richard Maidman, Mitchel Maidman and Townhouse have exercised and continue to exercise control over the Maidman Real Estate Entities.

103.    By reason of the Debtor's various interests in the Maidman Real Estate Entities, Debtor was, and the Trustee, on behalf of the Debtor's estate now is, entitled to receive the benefits of such interests, including but not limited to shares of the profits arising from the sale of assets by the Maidman Real Estate Entities and shares of the income earned by the Maidman Real Estate Entities from ownership and management of their assets.

104.    The Defendants have not fully accounted for their management, allocation, and use of the proceeds, profits, and losses arising from the purchase and sale of assets by the Maidman Real Estate Entities, and the income earned by the Maidman Real Estate Entities, from management of their assets despite their obligation to do so pursuant to the relevant

22

operating agreements and organizational documents of the various Maidman Real Estate Entities, as well as pursuant to applicable law.

105.   The Trustee, on behalf of the Debtor's bankruptcy estate, has rights to certain distributions from the Maidman Real Estate Entities, including the Debtor's Entities.   An accounting is needed to determine whether any distributions that were otherwise due the Debtor or the Trustee were and/or are being diverted to other individuals or entities, to the detriment of the Debtor's estate and the Debtor's creditors.

106.   All Defendants, and each of them, have a duty to provide information to the Trustee that is relevant to the Debtor's financial affairs, including the information requested herein with respect to, among other things, all transactions (including, without limitation, sales transactions, lease transactions, loan transactions, intercompany loans, intercompany transfers and investments), all assets and liabilities, all distributions and disbursements, all mortgages and sources of funds used to pay such mortgages, all major renovations and capital improvements, current market value of each real property asset, all federal and state tax filings, and other investments with non-Maidman-affiliated entities during the Relevant Time Period by and/or of each of the Maidman Real Estate Entities, including the Debtor's Entities.

107.   Based upon the foregoing, the Trustee is entitled to an order of this Court compelling the Defendants to provide a full and complete accounting with respect to, among other things, all transactions (including, without limitation, sales transactions, lease transactions, loan transactions, intercompany loans, intercompany transfers and investments), all assets and liabilities, all distributions and disbursements, all mortgages and sources of funds used to pay such mortgages, all major renovations and capital improvements, current market value of each real property asset, all federal and state tax filings, and other investments with non-Maidman-

affiliated entities during the Relevant Time Period by and/or of each of the Maidman Real Estate Entities, including the Debtor's Entities.

108.    The Trustee reserves the right to supplement, amend, or modify this Complaint upon receipt of the full and complete accounting from Defendants.


## RESERVATION OF RIGHTS

109.    During the course of this adversary proceeding, the Trustee may learn (through discovery, an accounting, and/or otherwise) of additional information or claims he may have against the Defendants or other persons or entities.   As indicated, the Defendants have not produced all documents relevant to the Debtor's financial affairs, including the information requested in the Trustee's cause of action for an accounting.   Therefore, the Trustee expressly reserves his right to amend and supplement this Complaint to include: (i) further information regarding the various causes of action set forth herein, (ii) additional defendants, and/or (iii) additional causes of action that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments and supplements to relate back to this Complaint.

110.    The Trustee hereby expressly reserves the right to amend and/or supplement either the factual bases and/or the relief requested in this Complaint.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee on behalf of the Debtor's estate as follows:

i.    On the First Cause of Action, against Defendants Richard Maidman, Mitchel Maidman and WM Maidman, jointly and severally, (a) declaring that they have violated the automatic stay, (b) enforcing the automatic stay and enjoining them from making any further disbursements from the Debtor's capital account to any person or entity other than Plaintiff, and (c) awarding the Trustee damages in an amount to be proven at trial but not less than $55,000.00, together with punitive damages in the amount of $110,000.00, plus interest thereon;

ii.    On the Second Cause of Action against Defendants Richard Maidman, Mitchel Maidman and WM Maidman, jointly and severally, damages in an amount to be proven at trial but not less than $55,000.00, together with punitive damages in the amount of $110,000.00, plus interest thereon;

iii.    On the Third Cause of Action against Defendants Richard Maidman, Mitchel Maidman and WM Maidman, jointly and severally, damages in an amount to be proven at trial but not less than $81,000.00 together with any additional amounts withheld subsequent to the date of filing this adversary proceeding, plus interest thereon;

iv.    On the Fourth Cause of Action against Defendants Richard Maidman and Mitchel Maidman, jointly and severally, damages in an amount to be proven at trial but not less than $81,000.00 together with any additional amounts withheld subsequent to the date of filing this adversary proceeding, plus interest thereon;

v.    On the Fifth Cause of Action against Defendants Amsterdam Manager, Richard

Maidman and Mitchel Maidman, jointly and severally, damages in an amount to be

proven at trial but not less than $772,764.00, plus interest thereon;

vi.    On the Sixth Cause of Action against Defendants 556 Condo, 554-556 Manager,

Richard Maidman and Mitchel Maidman, jointly and severally, damages in an amount to

be proven at trial but not less than $184,000.00, plus interest thereon;

vii.    On the Seventh Cause of Action against Defendants R&D 233/408, Richard

Maidman and Mitchel Maidman, jointly and severally, damages in an amount to be

proven at trial but not less than $50,000.00 plus interest thereon;

viii.    On the Eighth Cause of Action against Defendants Richard Maidman and Mitchel

Maidman, jointly and severally, damages in an amount to be proven at trial but not less

than $1,006,764.00, plus interest thereon;

ix.    On the Ninth Cause of Action against Defendants Richard Maidman and Mitchel

Maidman, jointly and severally, damages in an amount to be proven at trial but not less

than $1,006,764.00 together with punitive damages in an amount of $2,013,528.00, plus

interest thereon;

x.    On the Tenth Cause of Action against all Defendants, jointly and severally,

compelling them to provide a full and complete accounting with respect to, among other

things, all transactions (including, without limitation, sales transactions, lease

transactions, loan transactions, intercompany loans, intercompany transfers and

investments), all assets and liabilities, all distributions and disbursements, all mortgages

and sources of funds used to pay such mortgages, all major renovations and capital

improvements, current market value of each real property asset, all federal and state tax

filings, and other investments with non-Maidman-affiliated entities by and/or of each of the Maidman Real Estate Entities, for the period from six (6) years prior to the Petition Date through the present;

xi.   Awarding the Trustee's reasonable attorneys' fees and costs; and

xii.   Granting such other and further relief as the Court deems just and proper.


Dated: New York, New York
       March 3, 2015

       **TARTER KRINSKY & DROGIN LLP**
       *Substitute Special Litigation Counsel to the*
       *Chapter 7 Trustee*


      By:   _____/s/ Robert A. Wolf_____
       Robert A. Wolf
       Christopher Tumulty
       1350 Broadway, 11th Floor
       New York, New York 10018
       (Tel) 212.216.8000
       rwolf@tarterkirnsky.com
       ctumulty@tarterkrinsky.com